1
2
3
4
5
6
7

8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

11   CARRIE ROBERTS,                                    ) Case No.: 1:20-cv-00239-SKO
                                                        )
12              Plaintiff,                              ) ORDER REMANDING FOR FURTHER
                                                        ) PROCEEDINGS PURSUANT TO 42 U.S.C. §
13        v.                                            ) 405(g)
                                                        )
14   KILOLO KIJAKAZI, Acting Commissioner )  ORDER DIRECTING ENTRY OF JUDGMENT IN
     of Social Security,                                ) FAVOR OF PLAINTIFF CARRIE ROBERTS AND
15                                                      ) AGAINST DEFENDANT KILOLO KIJAKAZI
                Defendant.                              )
16   _____ )

17   **I.      INTRODUCTION**

18           On February 15, 2020, Plaintiff Carrie Roberts ("Plaintiff") filed a complaint under 42 U.S.C.

19   § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the

20   "Commissioner" or "Defendant") denying her application for Disability Insurance Benefits ("DIB")

21   under Title II of the Social Security Act (the "Act").  (Doc. 1.)   The matter is currently before the

22   Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K.

23   Oberto, United States Magistrate Judge.[1]

24   **II.     BACKGROUND**

25           On February 6, 2018, Plaintiff filed an application for Disability Insurance Benefits ("DIB")

26   under Title II of the Act, alleging she became disabled on June 1, 2017.  (Administrative Record

27

28

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 12, 13.)

("AR") 151-57.) She alleges she became disabled due to a combination of physical and mental impairments, including a history of hernia repair, degenerative disc disease of the lumbar and cervical spine, obesity, hypertension, depression, and anxiety. (AR 15-17.) Plaintiff was born on August 20, 1967, and was 49 years old as of the alleged onset date. (AR 151.) Plaintiff completed the 12th grade, and she worked as a residential caregiver from 1992 to June 2017. (AR 169.)

A.   Relevant Medical Evidence[2]

On September 28, 2016, Plaintiff underwent laparoscopic surgery for umbilical hernia repair. (AR 311.)

On November 4, 2016, Plaintiff presented to Dr. Zhiqiang Chen for post-surgery follow-up of her umbilical hernia repair. (AR 324-25.) Plaintiff complained of pain in her abdomen at the surgery site. (AR 325.) She was advised to take Ibuprofen for pain as needed. (AR 325-26.)

On November 9, 2016, Plaintiff presented to Dr. Thanh Tuyen Thi Huynh for complaint of pain at the surgery site. (AR 324.) Dr. Huynh stated the hernia had been extremely small, and that he did not believe her preoperative pain could have been due to the hernia. (AR 324.) From a surgical standpoint, Dr. Huynh assessed that Plaintiff was healed. (AR 324.) Dr. Huynh offered to refer Plaintiff for CT scan to document any other issues which could be causing her pain. (AR 324.)

Plaintiff underwent a post-repair CT scan on November 9, 2016. (AR 311, 323.) The CT scan showed a 2.5 cm irregular nodular enhancing lesion involving the left anterior pelvic wall, which could represent endometriosis. (AR 323.) Plaintiff was assessed with probable endometriosis. (AR 323.)

On November 17, 2016, Plaintiff presented to Brian Cormier, P.A., for follow-up of her umbilical hernia repair. (AR 294.) Plaintiff was experiencing moderate surgical wound pain. (AR 292.) Plaintiff was observed having normal gait and muscle strength of 5/5 in all major muscle groups. (AR 292.)

/////

/////

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

On November 18, 2016, Plaintiff was examined by Dr. Chen for her umbilical area pain. (AR 321.)  Dr. Chen advised Plaintiff to take Ibuprofen for pain, and referred Plaintiff to Dr. Cara Franken for a second opinion, at Plaintiff's request. (AR 322.)

On November 30, 2016, Plaintiff presented to Dr. Cara Franken, general surgeon, for aftercare of umbilical hernia repair. (AR 318.)  Dr. Franken opined that, other than pain control, there was nothing to offer Plaintiff from a surgical perspective. (AR 320.)  Dr. Franken diagnosed Plaintiff with endometriosis; she opined, however, that it was not necessarily what was causing her pain. (AR 321.)  Dr. Franken prescribed Tramadol for pain, and opined that the hernia repair may just be taking longer than average to heal after surgery. (AR 321.)

On December 2, 2016, Plaintiff presented to Dr. Chen for her umbilical hernia repair pain. (AR 317.)  Dr. Chen noted that Plaintiff had no difficulty arising from a chair, and no difficulty getting up and down from the exam table.  (AR 317.)  The surgical incision was healed.  (AR 317.)  Dr. Chen advised Plaintiff to continue taking Ibuprofen for pain as needed, and to continue her home exercise program. (AR 318.)

On December 6, 2016, Plaintiff was seen by her gynecologist, who determined that the pain was likely due to scar tissue from surgery. (AR 315.)

On December 9, 2016, Plaintiff presented to Dr. Chen for follow-up. (AR 315.)  Dr. Chen stated that Plaintiff reported she had slight improvement with pain over the surgery site. (AR 315.)

On January 4, 2017, Plaintiff was seen by Dr. Chen for follow-up. (AR 313.)  Plaintiff complained that she was continuing to have the same pain over surgery site and left lower abdomen. (AR 313.)  Dr. Chen advised Plaintiff to continue taking Mobic as needed for pain. (AR 314.)

On February 8, 2017, Plaintiff followed up with Dr. Chen for pain in the umbilical area.  (AR 310.)  Examination findings revealed that the incision was healed and no hernia was noted; however, Plaintiff was experiencing tenderness and mild swelling in the area. (AR 311.)  Dr. Chen opined that Plaintiff had reached maximal medical improvement and her condition had become permanent and stationary as of February 8, 2017. (AR 311.)  Dr. Chen opined that Plaintiff was unable to return to her usual and customary occupation, and that she had the following permanent modified work restrictions:

lift, carry, push, pull no more than 15 pounds; and bend at waist occasionally, up to 25% of the shift. (AR 312.)

On March 16, 2017, Plaintiff was examined by P.A. Cormier following a transition of care from the emergency department for her complaints of abdominal pain. (AR 285, 413.)  Despite normal labwork and negative CT scan, Plaintiff was reporting sharp and unbearable pain in the abdomen area, especially on movement. (AR 285, 413.)  P.A. Cormier noted Plaintiff had been discharged from her surgeon, and the surgeon had been unable to explain the cause of the pain. (AR 285, 413.) P.A. Cormier prescribed morphine sulfate for pain relief and referred Plaintiff to general surgeon Dr. Tam. (AR 286, 414-15.)

On April 24, 2017, Plaintiff followed up with P.A. Cormier with complaints of leg and abdominal pain. (AR 282, 410.) Plaintiff was prescribed Losartan and scheduled for a one-month follow-up. (AR 284, 412.)

On April 26, 2017, Plaintiff presented to Dr. Tam for abdominal pain. (AR 407.) Dr. Tam diagnosed Plaintiff with post-surgery neuropathic pain. (AR 407.)

On May 16, 2017, Plaintiff was seen by P.A. Cormier in transition from the emergency department and presenting with abdominal pain. (AR 285.)  Plaintiff was referred to a general surgeon for evaluation of the persistent post-op abdominal pain. (AR 287.)

On May 17, 2017, Plaintiff presented to P.A. Cormier, for follow-up of her current medical problems including hypertension and umbilical hernia repair. (AR 279, 407.) Plaintiff was diagnosed with post-surgery neuropathic pain. (AR 279.)  Plaintiff was referred to a chronic pain specialist for evaluation of her neuropathic abdominal pain. (AR 280.)

On June 7, 2017, Plaintiff followed up with P.A. Cormier for hypertension. (AR 276, 404.) Plaintiff complained of pain in her abdomen. (AR 276, 404.)  P.A. Cormier noted that Plaintiff was taking Gabapentin but it was not controlling the pain. (AR 276.)

On July 5, 2017, Plaintiff presented to P.A. Cormier for follow-up of hypertension. (AR 400.) Plaintiff did not complain of abdominal pain, and she was found to have normal gait and 5/5 muscle strength in all major muscle groups. (AR 402.)

4

On August 2, 2017, Plaintiff followed up with P.A. Cormier for hypertension. (AR 270, 398.) P.A. Cormier noted that Plaintiff was negative for abdominal pain. (AR 270, 398.)  Plaintiff was examined and found to have normal gait and muscle strength of 5/5 in all major muscle groups. (AR 271, 399.)

On November 3, 2017, Plaintiff presented to P.A. Cormier for complaints of neck pain to the left side, precipitated by a motor vehicle accident that occurred on October 27, 2017. (AR 243, 264, 392.)  Examination revealed pain with range-of-motion in the neck with forward flexion and extension. (AR 265, 393.)  P.A. Cormier ordered a cervical spine x-ray exam to be performed. (AR 266, 394.)

On November 6, 2017, a cervical spine x-ray exam was performed on Plaintiff.  (AR 243, 442.)  The x-ray revealed mild spondylosis with no apparent cervical spine fracture or subluxation. (AR 243, 442.)

On November 14, 2017, Plaintiff presented to P.A. Cormier for follow-up of her complaints of neck pain to the left side. (AR 261, 389.)  Plaintiff was observed having normal gait and muscle strength of 5/5 in all major muscle groups. (AR 262, 390.)  P.A. Cormier recommended range of motion exercises and prescribed physical therapy. (AR 263, 391.)

On November 29, 2017, Plaintiff presented to P.A. Cormier for follow-up of her complaints of neck pain. (AR 258, 386.)  P.A. Cormier noted pain with range of motion in the neck with forward flexion, lateral flexion and leftward rotation. (AR 259, 387.)

On December 22, 2017, Plaintiff followed up with P.A. Cormier for her complaint of neck pain. (AR 255, 383.) P.A. Cormier noted Plaintiff was still awaiting physical therapy and still experienced pain and stiffness to her left side of her neck. (AR 255, 383.)  P.A. Cormier noted Plaintiff had a normal gait and pain with range of motion in the neck. (AR 256, 384.)  P.A. Cormier ordered a CT scan be done of the neck. (AR 257, 385.)

On January 2, 2018, a cervical spine x-ray exam was performed on Plaintiff.  (AR 436.)  The findings showed cervical spondylosis with normal alignment; otherwise, the findings were normal. (AR 239, 366, 436.)

On January 11, 2018, Plaintiff presented to Dr. Krishnamoorthi with complaints of neck pain. (AR 252, 380.) Dr. Krishnamoorthi noted that the recent CT scan of the neck was normal. (AR 252, 380.)  Plaintiff was observed having normal gait and a decreased range of motion in the neck due to pain and soft tissue swelling. (AR 253, 381.) She was prescribed Ibuprofen for pain. (AR 253-54, 381-82.)

On February 1, 2018, Plaintiff presented to Dr. Krishnamoorthi with complaints of neck pain. (AR 249.)  A physical examination revealed normal gait, pain with range of motion in neck, and mild swelling and tenderness in the left anterior neck. (AR 250.)  Plaintiff was prescribed Ibuprofen and her prescription for Gabapentin was refilled. (AR 251, 378-79.)

On March 1, 2018, Plaintiff followed up with Dr. Krishnamoorthi for complaints of abdominal pain and neck pain. (AR 374.)  The abdominal pain was chronic since umbilical hernia surgery. (AR 374.)  Plaintiff stated that only morphine pills helped her pain. (AR 374.)  Plaintiff also suffered from neck pain due to a motor vehicle accident. (AR 374.) Pain was slightly better with physical therapy. (AR 374.)  Plaintiff reported that Gabapentin was not helping relieve the pain. (AR 374.)

On April 3, 2018, Plaintiff followed up with Dr. Krishnamoorthi for complaints of abdominal pain and neck pain. (AR 371.) Dr. Krishnamoorthi described the abdominal pain as chronic, with the same symptoms since umbilical hernia surgery. (AR 371.)  Plaintiff was also diagnosed with neck pain. (AR 371.)  Pain levels remained the same despite physical therapy. (AR 371.)

On April 5, 2018, an MRI was taken of Plaintiff's lumbar spine. (AR 362, 430.)  The findings revealed mild straightening of the cervical spine, minimal anterior disc and osteophytes at C4-5, C5-6, and C6-7, normal signal in spinal cord, normal position of the cerebral tonsils, and well-maintained disc space with mild dehydration. (AR 362.)

On May 2, 2018, an EMG study was completed. (AR 462.) The study was mostly normal with L4-L5 radiculopathy, more prominent on the left, and mild peripheral neuropathy. (AR 462.)

On May 7, 2018, Plaintiff followed up with Dr. Krishnamoorthi for lower back pain. (AR 368.) Plaintiff was assessed with normal gait, pain with range of motion in the neck and back, hypoesthesia in right C6 distribution, and hyperesthesia in right L5 distribution.  (AR 369.)  An MRI of the lumbar spine was ordered, and Plaintiff was advised to continue Norco and MS Contin. (AR 370.)

6

On June 6, 2018, Plaintiff was examined by neurologist Dr. Jeffrey Levin. (AR 464.)  Dr. Levin noted that Plaintiff's MRI showed multiple foraminal narrowing most prominent at C5-C6 and C6-C7.  (AR 464.)  Dr. Levin noted that Plaintiff was given physical therapy without much success. (AR 464.)  Dr. Levin noted that examination showed Plaintiff's cranial nerves were intact. (AR 464.) Plaintiff was able to ambulate without difficulties. (AR 464.)

On June 12, 2018, an MRI was taken of Plaintiff's lumbar spine. (AR 466.)  The findings showed good alignment of the lumbar spine, the vertebral bodies were normal in height, and there were scattered small hemangiomas within the lumbar spine. (AR 466.)  Mild to moderate facet degenerative changes were described. (AR 466.)

On August 21, 2018, Dr. Krishnamoorthi completed a questionnaire finding Plaintiff to be disabled as of January 2017. (AR 468.)  Dr. Krishnamoorthi opined that Plaintiff had certain medical problems that precluded her from performing any full-time work at any exertion level. (AR 468.)  Dr. Krishnamoorthi opined that Plaintiff suffered from chronic neck, back, and abdominal pain, could not lift more than 10-15 pounds, could not sit longer than 2 hours or stand longer than 1 hour without rest, could not sit longer than 4 hours or stand/walk longer than 2 hours in any 8-hour period, and required breaks of 30 minutes every 2 hours to lie down. (AR 468.)

On September 18, 2018, Plaintiff was treated by Dr. Krishnamoorthi for chronic pain syndrome. (AR 471.) Plaintiff suffered from moderate abdominal pain, and pain with range of motion in the neck and back. (AR 472.)  Plaintiff was prescribed magnesium oxide. (AR 473.)

B.    State Agency Physicians

On April 3, 2018, Dr. C. Bullard, a non-examining state agency physician, reviewed the available medical records and assessed Plaintiff's medical impairments of discogenic and degenerative back disorder and abdominal pain at site of hernia repair. (AR 61-64.)  Dr. Bullard determined that Plaintiff could lift and/or carry up to 20 pounds occasionally and 10 pounds frequently. (AR 63.)  Dr. Bullard further determined that Plaintiff could stand and/or walk about 6 hours in an 8-hour workday and sit about 6 hours in an 8-hour workday. (AR 63.)  Dr. Bullard found that Plaintiff had no restrictions on pushing and pulling movements other than the above limitations for lift and/or carry. (AR 63.)  He further found that Plaintiff could occasionally climb ramps, stairs, ropes, ladders, and

scaffolds. (AR 63.)  He also found that Plaintiff was able to balance unlimitedly, stoop occasionally, kneel frequently, and crawl frequently. (AR 63-64.)  Plaintiff had no manipulative, visual, communicative, or environmental limitations.  (AR 64.)  Dr. Bullard concluded that Plaintiff was able to perform light work. (AR 64.)

On May 16, 2018, Dr. Roger Fast, a second non-examining state physician, reviewed the available medical records.  (AR 75-77.)  Dr. Fast noted Plaintiff's complaints of pain to her abdomen at the site of hernia repair. (AR 77.)  Dr. Fast noted that Plaintiff was morbidly obese, and her obesity initially prevented a good exam.  (AR 77.)  Subsequent CT scans showed no recurrence of hernia after the hernia mesh repair, yet Plaintiff continued to experience pain. (AR 77.)  He further noted that gynecologists determined that possible endometriosis was not the cause of pain. (AR 77.) With respect to complaints of neck pain and stiffness, Dr. Fast noted Plaintiff had been in a motor vehicle accident in October 2017, and imaging showed only mild spondylosis and no radiculopathy.  (AR 77.)  Dr. Fast agreed with Dr. Bullard's disability determination of a light residual functional capacity. (AR 77.)

C.      Administrative Proceedings

The Commissioner initially denied Plaintiff's application for DIB on April 12, 2018. (AR 56-67.)  Plaintiff's application was denied again on reconsideration on May 29, 2018. (AR 68-80.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  At a hearing held on November 9, 2018, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions. (AR 27-55.)  On March 12, 2019, the ALJ determined that Plaintiff was not disabled insofar as she could perform other jobs that existed in significant numbers in the national economy. (AR 20.)

D.      The ALJ's Decision

In her decision dated March 12, 2019, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 12–22.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 15-22.)  The ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 1, 2017, the alleged onset date (step one). (AR 15.)  At step two, the ALJ found Plaintiff's following impairments to be severe: history of hernia repair; and degenerative disc disease in lumbar and cervical spine.  (AR 15.)  Plaintiff did not have an impairment or combination of

impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 17.)

The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at steps four and five. See 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity. . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) except that the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; she can stand, walk, and/or sit for six hours each in an eight-hour workday; she can occasionally climb ramps, stairs, ladders, ropes, or scaffolds; she can occasionally stoop, crawl; she can frequently kneel, crouch; and she can occasionally reach overhead bilaterally.

(AR 17.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" she rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record[.]" (AR 18.)

The ALJ determined that Plaintiff was unable to perform any past relevant work (step four). (AR 20.)  Ultimately, the ALJ concluded that Plaintiff was not disabled because Plaintiff could perform a significant number of other jobs in the national economy, specifically: "mail clerk," Dictionary of Operational Titles ("DOT") code 209.687-026; "cashier II," DOT code 211.462-010; and "fast food worker," DOT code 311.472-010 (step five). (AR 21.)

Plaintiff sought review of the ALJ's decision before the Appeals Council, which denied review on December 13, 2019. (AR 1.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

## III.    LEGAL STANDARD

### A.    Applicable Law

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). However, "[a]n individual shall be determined to be under a disability only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot,

considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. at § 1382c(a)(3)(B).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); see also 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC]...to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); see also 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." Burch, 400 F.3d at 679 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." Id. (citing Swenson, 876 F.2d at 687).

B.      Scope of Review

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Tackett, 180 F.3d at 1097 (citation omitted). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229

1  (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." <u>Ryan v.</u>

2  <u>Comm'r of Soc. Sec.</u>, 528 F.3d 1194, 1198 (9th Cir. 2008).

3  "This is a highly deferential standard of review . . . ." <u>Valentine v. Comm'r of Soc. Sec.</u>

4  <u>Admin</u>., 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed

5  only if that decision is not supported by substantial evidence or it is based upon legal error." <u>Tidwell v.</u>

6  <u>Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1999).  Additionally, "[t]he court will uphold the ALJ's conclusion

7  when the evidence is susceptible to more than one rational interpretation." <u>Id</u>.; <u>see, e.g.</u>, <u>Edlund v.</u>

8  <u>Massanari</u>, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one

9  rational interpretation, the court may not substitute its judgment for that of the Commissioner."

10  (citations omitted)).

11  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of

12  the Commissioner.  <u>Macri v. Chater</u>, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must

13  determine whether the Commissioner applied the proper legal standards and whether substantial

14  evidence exists in the record to support the Commissioner's findings.  <u>See</u> <u>Lewis v. Astrue</u>, 498 F.3d

15  909, 911 (9th Cir. 2007).  Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by

16  isolating a specific quantum of supporting evidence.'"  <u>Tackett</u>, 180 F.3d at 1098 (quoting <u>Sousa v.</u>

17  <u>Callahan</u>, 143 F.3d 1240, 1243 (9th Cir. 1998)).  "Rather, a court must 'consider the record as a whole,

18  weighing both evidence that supports and evidence that detracts from the [Commissioner's]

19  conclusion.'"  <u>Id</u>. (quoting <u>Penny v. Sullivan</u>, 2 F.3d 953, 956 (9th Cir. 1993)).

20  Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless."

21  <u>Molina v. Astrue</u>, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing <u>Stout v. Comm'r, Soc. Sec. Admin.</u>, 454

22  F.3d 1050, 1055–56 (9th Cir. 2006)).  Harmless error "exists when it is clear from the record that 'the

23  ALJ's error was inconsequential to the ultimate nondisability determination.'"  <u>Tommasetti v. Astrue</u>,

24  533 F.3d 1035, 1038 (9th Cir. 2008) (quoting <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th

25  Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking

26  the agency's determination." <u>Shinseki v. Sanders</u>, 556 U.S. 396, 409 (2009) (citations omitted).

27  /////

28  /////

**IV.    DISCUSSION**

    A.    Symptomology Evidence

Plaintiff alleges the ALJ failed to provide clear and convincing reasons for finding Plaintiff not credible.  Defendant counters that the ALJ properly evaluated Plaintiff's testimony and provided clear reasons supported by substantial evidence for discounting Plaintiff's testimony.

In evaluating the credibility of a claimant's testimony regarding her impairments, an ALJ must engage in a two-step analysis.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.  Id.  The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)).  If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection.  Id.  As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

Tommasetti, 533 F.3d at 1039 (citations and internal quotation marks omitted); see also Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting Moore v. Comm'r of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)).  General findings are not sufficient to satisfy this standard; the ALJ "'must identify what testimony is not

1   credible and what evidence undermines the claimant's complaints.'" Burrell v. Colvin, 775 F.3d 1133,

2   1138 (9th Cir. 2014) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).

3        Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be

4   expected to cause the alleged symptoms." (AR 18.) Nevertheless, the ALJ also found that "[Plaintiff's]

5   statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely

6   consistent with the medical evidence and other evidence in the record for the reasons explained in this

7   decision." (AR 18.)  Since the ALJ found Plaintiff's "medically determinable impairments could

8   reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ

9   provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding.  See

10   Vasquez, 572 F.3d at 591.  Here, the ALJ discounted Plaintiff's testimony as inconsistent because the

11   alleged severity of symptoms was not supported by the available medical records.  (AR 18.)

12        The ALJ first discussed Plaintiff's allegations of symptoms.  The ALJ noted that Plaintiff

13   stated she could not work due to neuropathy in her legs and feet, tingling in her arms and hands, and

14   pinching, burning and numbness in her stomach. (AR 18.)  The ALJ noted that Plaintiff alleged that

15   due to her impairments, she was unable to stand on her feet because of numbness. (AR 18.)  Plaintiff

16   further stated she found it hard to hold objects due to the tingling in her hands, she has difficulty with

17   buttons or small manipulations, and she has difficulty shopping for groceries because she cannot pick

18   anything up.  (AR 18.)  The ALJ noted that Plaintiff stated she had difficulty showering because it was

19   hard for her to bend to clean her lower body. (AR 18.)  Thus, the ALJ considered Plaintiff's specific

20   allegations, thus satisfying her burden. Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).

21        The ALJ then discounted Plaintiff's testimony regarding her allegations of disabling conditions

22   because her complaints were inconsistent with the medical evidence. (AR 18-20.) The ALJ provided

23   substantial support for this conclusion.  The ALJ set forth notable medical findings that were

24   inconsistent with Plaintiff's statements concerning the intensity, persistence and limiting effects of his

25   symptoms.

26        The ALJ noted that the various imaging studies on Plaintiff's neck, spine, and abdomen

27   revealed unremarkable findings: 1) CT scan of neck in January 2018 was normal; 2) Cervical spine x-

28   ray revealed only mild spondylosis; 3) MRI in April 2018 of cervical spine revealed only minimal to

mild posterior disc and osteophytes at C4-5, C5-6, C6-7, as well as Luschka and facet degenerative changes at C3-4, C4-5, C5-6, C6-7 and C7-T1; 4) CT scan of soft tissue of neck was unremarkable; 5) MRI of lumbar spine showed only minimal to mild disc and osteophytes from L1 to S1; and 6) CT exam of abdomen and pelvis was unremarkable. (AR 18.)  Further, the ALJ noted that Plaintiff received very little treatment for her back and neck pain with Plaintiff only receiving pain medication from her primary care physician.  (AR 18-19.) In addition, the medical evidence provided no recommendations to pursue surgical intervention. (AR 19.)

With respect to Plaintiff's complaints of abdominal pain, the ALJ noted that there were no significant findings of severe pain upon physical examination. (AR 19.)  And although Plaintiff alleged numbness and pain since her hernia repair surgery, physical examinations showed only mild to moderate epigastric tenderness. (AR 19.)

The ALJ further noted that a nerve study conducted by Dr. Jeffrey Levin in May 2018 for Plaintiff's complaints of neuropathy showed that the cranial nerve exam II-XII was intact and motor exam in upper extremities was unremarkable. (AR 19.)  Further, Dr. Levin noted mild stocking distribution neuropathy, distal gradient in lower extremities and mild weakness in hip flexion and dorsiflexion bilaterally. (AR 19.)

The ALJ determined that the medical evidence showed only mild or normal findings. The Court finds that the ALJ properly considered inconsistency with the objective medical evidence as a "clear and convincing" reason to discount Plaintiff's credibility. See Salas v. Colvin, No. 1:13–cv–00429–BAM, 2014 WL 4186555, at *6 (E.D. Cal. Aug. 21, 2014).

Nevertheless, other than the lack of medical evidence, the ALJ failed to set forth any other reason to discount Plaintiff's credibility.  "[T]he Ninth Circuit has repeatedly emphasized that, 'in evaluating the credibility of . . . testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of [the impairment].'" Ondracek v. Comm'r of Soc. Sec., No., 1:15–cv–01308–SKO, 2017 WL 714374, at *8 (E.D. Cal. Feb. 22, 2017) (quoting Burch, 400 F.3d at 680); see, e.g., Rollins, 261 F.3d at 857 (a claimant's testimony "cannot be

1    rejected on the sole ground that it is not fully corroborated by objective medical evidence).  The ALJ

2    cannot reject Plaintiff's testimony on objective medical evidence alone.

3         Plaintiff cites the ALJ's finding that she only received conservative treatment in the form of

4    pain medication with no indications for surgical intervention as another possible reason to discount her

5    credibility.  While this may be considered another reason, there is no support for it in the record.  As

6    noted by Plaintiff, she had an extensive treatment history and was treated consistently for her

7    complaints of pain in her abdomen.  As to potential surgery, Plaintiff testified that she was told by her

8    physician that further surgical attempts would only cause more pain. (AR 37.)  Plaintiff cannot be

9    faulted "for failing to pursue non-conservative treatment options if none exist." Matamoros v. Colvin,

10   2014 WL 1682062, at *4 (C.D. Cal. 2014).  As to her neck pain, Plaintiff was prescribed narcotic pain

11   medications.  It is not apparent that the consistent use of narcotic pain medicine can be characterized

12   as "conservative" treatment. Hidalgo v. Berryhill, 2017 WL 931813, *4 (E.D. Cal. 2017); see also

13   Aguilar v. Colvin, No. CV 13–8307 VBK, 2014 WL 3557308, at *8 (C.D. Cal. 2014) ("It would be

14   difficult to fault Plaintiff for overly conservative treatment when he has been prescribed strong

15   narcotic pain medications.").

16        Thus, the ALJ erred by relying only on the lack of objective medical evidence to discount

17   Plaintiff's testimony.  The Court notes that it "may not reverse an ALJ" decision on account of an

18   error that is harmless." Molina, 674 F.3d at 1111.  Given that the lack of medical evidence was the

19   only reason relied on by the ALJ to discount Plaintiff's testimony, it is clear that the determination was

20   not harmless.

21   **V.    REMAND**

22        The decision whether to remand a matter pursuant to 42 U.S.C. § 405(g) or to order immediate

23   payment of benefits is within the discretion of the district court.  Harman v. Apfel, 211 F.3d 1172,

24   1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an administrative agency

25   determination, the proper course is to remand to the agency for additional investigation or explanation.

26   Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (citing INS v. Ventura, 537 U.S. 12, 16 (2002)).

27   Generally, an award of benefits is directed when:

28        (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence,
         (2) there are no outstanding issues that must be resolved before a determination of

15

disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).  In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed.  Varney v. Sec'y of Health & Human Serv., 859 F.2d 1396, 1399 (9th Cir. 1988).

Here, the ALJ improperly rejected Plaintiff's testimony.  The matter should be remanded for the ALJ to re-evaluate the medical evidence, reconsider all of the opinions, and reconsider Plaintiff's testimony.  See Moisa, 367 F.3d at 886.  Upon reconsideration of Plaintiff's testimony, the ALJ should include all the appropriate limitations into the RFC and question the vocational expert accordingly.

## VI.    CONCLUSION AND ORDER

For the reasons set forth above, the Court finds that the ALJ erred in discounting Plaintiff's testimony, and the administrative decision should not be upheld by the Court. See Sanchez, 812 F.2d at 510.  Accordingly, the Court ORDERS:

1.    The matter is REMANDED pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

2.    The Clerk of Court IS DIRECTED to enter judgment in favor of Plaintiff Carrie Roberts and against Defendant, Kilolo Kijakazi, Acting Commissioner of Social Security.


IT IS SO ORDERED.

Dated:   **March 24, 2022**                        */s/ Sheila K. Oberto*
                                         UNITED STATES MAGISTRATE JUDGE